[Civ. No. 33376. First\Dist., Div. Four. June 24, 1974.]

GENERAL INSURANCE COMPANY OF AMERICA,
Plaintiff and Respondent, v.
LARRY SINGLETON et al., Defendants and Appellants;
FRED L. BROWN et al., Defendants and Respondents.

**COUNSEL**

Harvey Diemer for Defendants and Appellants.

Knecht, Dingus & Boring and Larry D. Dingus for Plaintiff and Respondents.

Frederick A. Cone for Defendants and Respondents.

**OPINION**

**BRAY, J.**\*—Defendants and appellants Larry Singleton and Vonda Singleton appeal from the orders of the Alameda County Superior Court hereinafter described.

### Question Presented

A prior judicial determination that plaintiff was liable to Colwell Company was not required before the court could order settlement with it from receivership assets.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Record

This action arose out of the construction of a high-rise building in Oakland. Plaintiff and respondent General Insurance Company of America filed a complaint for specific performance, for declaratory relief and for damages for breach of a written agreement of indemnity against appellants Singleton, defendant Merritt Building & Construction Company and others. Certain pleadings were filed by the defendants including a cross-complaint by defendants Fred L. Brown and Geneva Brown. Inasmuch as this appeal is concerned only with the issues between respondent and appellants, it is unnecessary to consider the issues as to the defendants other than appellants. After a trial the court made the orders hereinafter set forth from which appellants have appealed.

## Facts

In 1965 defendants entered into a contract with T. H. Guy Company as owner, to construct a certain building. Plaintiff became the surety for defendants in connection with the construction project, executing a surety bond, naming Merritt Building & Construction Company and Singleton Corporation as principal, and both the owner and lender as obligees.

As inducement for plaintiff's execution of the surety bond, appellants who were stockholders, officers and directors of Singleton Company, one of the joint venturers of the contractor, together with the contractor and the other defendants, executed a written agreement to indemnify plaintiff for any loss under the surety bond. During the course of and following completion of the construction project, various disputes and controversies arose between the contractor, the owner, the lender and numerous unpaid materialmen and subcontractors, resulting in various lawsuits filed by such parties against both the contractor and plaintiff surety. The contractor became insolvent and a judgment in the sum of $205,841.46 was entered in one of the actions against the contractor and plaintiff. Plaintiff thereupon made demand upon appellants and the other signers of the indemnity agreement, for deposit of collateral security to protect it against loss under the bond, pursuant to the provisions of the indemnity agreement. As of that time plaintiff had a contingent exposure of loss under the bond in connection with eight separate claims in the aggregate amount of $1,104,-366.23, each of which was the subject of one or more pending lawsuits under the bond, filed by claimants against plaintiff.

These actions included a pending action by the lender (Colwell Company) for $500,000. It is the subject of the settlement with which we are concerned

on this appeal. After deducting cash collateral security already held by plaintiff in the amount of $127,000, its demand upon the indemnitors, including appellants, was for deposit of $977,366.23. Not receiving an affirmative response to that demand, respondent brought this action. An interlocutory decree was entered, after a trial, in which the court held that plaintiff is entitled to specific performance of the indemnity agreement requiring the indemnitors to deposit collateral security sufficient to protect plaintiff against loss and that as the aggregate of plaintiff's exposure exceeds the aggregate of the disclosed assets of defendants, their assets should be immediately transferred to a receiver appointed by the court. The court reserved jurisdiction to facilitate administration of the receivership and to resolve matters connected with the litigation constituting the basis of plaintiff's contingent exposure to loss.

Settlement of the claims against some of the defendants followed. Plaintiff moved for an order authorizing settlement for $150,000 of the independent litigation instituted by the lender and that the receiver pay that sum to the lender out of the assets of the receivership. All of the parties, except appellants, stipulated to the granting of the motion. The court entered an order authorizing settlement which provided in pertinent part that plaintiff was authorized to enter into a settlement with lender (Colwell Company) whereby $150,000 should be paid it from the receivership estate in exchange for proper dismissals of the two actions brought by lender and a release of claims. The time of payment and the particular assets of the receivership to be used were to be determined by the court at a later fixed date. Appellants then filed a motion objecting to liquidation of receivership assets and for order staying liquidation of receivership assets and payment of settlement amount. At the hearing appellants' sole ground of objection was, as it is on this appeal, that there had not been a prior adjudication of appellants' liability to the lender. The motion was denied and after further argument, the court filed an order for sale and liquidation of sufficient receivership assets to consummate the $150,000 settlement. A still further hearing was had and a supplemental order made to the same effect. The $150,000 settlement amount was thereafter paid out of the proceeds of certain liquidated receivership assets. Appellants purport to appeal from all said orders.

### Prior Judicial Determination Not Required

Appellants are not disputing the reasonableness of the settlement amount, but are arguing that a person cannot be held liable under an indemnity agreement until the indemnitee [plaintiff in the instant case] proves

that it was legally liable for the amount paid in settlement of the claim. The indemnity agreement provides as follows: "1. Surety [General Insurance Company of America] shall have the exclusive right for itself and the Undersigned to determine whether any claim or suit upon such Bonds shall, on the basis of liability, expediency or otherwise, be paid, compromised, defended or appealed. 2. Surety may incur such expenses, including attorneys' fees, as deemed necessary or advisable in the investigation, defense and payment of such claims. 3. Surety's determination of the foregoing shall be final and conclusive upon the Undersigned. 4. An itemized statement of loss and expense incurred by Surety, sworn to by an officer of Surety, shall be prima facie evidence of the fact and extent of the liability of Undersigned to Surety in any claim or suit by Surety against Undersigned."

Appellants contend that although plaintiff was entitled to settle the claim, it was not entitled to indemnification until it proved that it was legally liable for the amount paid in settlement of the claim. The only authority that appellants cite which can be construed to support this position is 41 Am.Jur.2d, Indemnity, section 33, page 723. However, this section of American Jurisprudence is dealing with rules that generally affect indemnity cases, and is not concerned with the provisions of a particular indemnity agreement. Appellants further rely on the following statement in *Fidelity & Deposit Co.* v. *Whitson* (1960) 187 Cal.App.2d 751, 757 [10 Cal.Rptr. 6]: "An indemnitee is not bound to submit to suit before paying the claim; of course, if he pays without such suit, he must prove that he was liable for the amount thus paid in order to recover from the indemnitor." It should be noted in *Whitson* the court was considering an indemnity agreement that contained a provision that settlement of a claim shall be prima facie evidence of liability and the court did not stop with the statement quoted by appellants but continued and stated: "where there is no trial and no judgment establishing liability, but a settlement of the litigation has been made, the settlement becomes presumptive evidence of the liability and the amount thereof, which presumption is subject to being overcome by proof." (*Id.* at pp. 757-758.)

Appellants also mistakenly rely on *Transamerica Insurance Company* v. *Bloomfield* (6th Cir. 1968) 401 F.2d 357, to support their argument. However, *Bloomfield* does not support appellants' contention but supports the position that the terms of the indemnity agreement are binding in this case if the settlement was made in good faith. *Bloomfield* provides: "Provisions in indemnity agreements granting to the indemnitor the right to compromise and settle claims, and providing that vouchers and other

evidence of payment shall be prima facie evidence of the propriety thereof, have been upheld as not against public policy and enforced by the courts." (*Id.* at p. 362.)

There is no evidence in the instant case to indicate that plaintiff surety did not act in good faith in settling the Colwell Company litigation. The different attorneys for the defendants differed as to the chances for the defendants to be successful in the lawsuit, but they all agreed that a great deal of money would have to be expended in order to defend the action (approximately $70,000) and felt that the action should be settled.

To require plaintiff to establish a case against the defendants [the indemnitors] in the same manner that a claimant against the indemnitee would have been obligated to do, would defeat the purpose of the clauses in the indemnity agreement allowing the indemnitee to settle claims. "The purpose of clauses in indemnity agreements of the type here involved is to facilitate the handling of settlements by sureties and obviate unnecessary and costly litigation." (*Transamerica Insurance Company* v. *Bloomfield, supra,* 401 F.2d 357, 363.)

Plaintiff argues in some length that appellants did not timely and properly object to the motion. Since the motion authorizing the settlement was properly granted, it is not necessary to consider whether appellants properly objected to the motion.

The judgments are affirmed.

Caldecott, P. J., and Christian, J., concurred.