Botsford, J.
The plaintiff, The Cadle Company (“the plaintiff’), brings an action to collect on a limited guaranty executed by defendant Cecil Marchionne for the debts incurred by Epitaxial Technologies, Inc. (“Epitaxial’j. Plaintiff claims that it is entitled to recover in excess of $379,000 plus interest and costs of collection.
Pursuant to Mass.R.Civ.P. 56(c), plaintiff now moves for summary judgment on the issue of Marchionne’s liability on the Guaranty and Marchionne’s counterclaim alleging a violation of G.L.c. 93A. For the following reasons, the plaintiffs motion for summary judgment is allowed.
*479 BACKGROUND
The undisputed facts are as follows. Epitaxial, by its president, James A. Trinchera, executed two promissory notes (“notes”) in favor of BayBank. One, dated May 30, 1986, had a principal amount of $335,000 (“First Note”). The other, dated July 9, 1986, had a principal amount of $165,000 (“Second Note”). On June 6, 1986, Marchionne executed a limited guaranty (“guaranty”), guaranteeing the debts of Epitaxial to BayBank up to $50,000, plus all costs including attorneys fees incurred in the enforcement of the guaranty.[1] On May 8, 1987, defendant sent BayBank a letter terminating the guaranty, as permitted under its terms. At that time, the First and Second Notes were still unpaid. On July 11, 1989, BayBank and Epitaxial restructured the First Note to reflect a principal balance of $300,000, and restructured the Second Note to reflect a principal balance of $139,000; in addition, interest on each note was changed from a fixed to a floating rate.[2] By November 1990, Epitaxial had defaulted on both notes. BayBank and Trinchera proceeded to put in place a plan to restructure the company’s debt.
In November 1993, BayBank made a written demand on Marchionne demanding payment under his guaranty of the notes which were then overdue and in default.[3] On January 11, 1994, Epitaxial was officially dissolved.
BayBank commenced this action in February 1994 against all the guarantors of the notes, including Marchionne. On June 15, 1994, BayBank transferred all its right, title, and interest in the restructured First Note and Second Note and guarantees to First Amherst Financial Group, Inc., which one month later transferred all its right, title, interest to the plaintiff.[4]
Currently there is an outstanding balance of more than $500,000 in principal and interest due and owing on the First Note and Second Note. To date, Marchionne has not paid any amount due under his guaranty. On June 3, 1996, this court granted summary judgment against defendants Niblack, Kling, Vozella and Asip in favor of the plaintiff based on their limited guarantees. On January 22, 1997, this court granted summary judgment against defendant Trinchera based on his unlimited guaranty. None of those defendants has made any payments to the plaintiff.
Marchionne opposes the plaintiffs motion for summaryjudgment on the ground that since May 8, 1997, he was no longer a guarantor for Epitaxial's debts. He argues that the guaranty expressly authorizes him to give written notice of termination and his cancellation letter dated May 8, 1987 effectively terminated his obligation as guarantor. In the alternative, Marchionne argues that the plaintiffs claim is barred by the six-year statute of limitation under G.L.c. 260 §1 (1996 ed.). Marchionne also contends that his counterclaim under G.L.c. 93A should proceed to trial.
DISCUSSION
This court grants summary judgment where there are no genuine issues of material fact and where the summary judgment record entitles the moving party to judgment as a matter of law. Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community Nat’l Bank v. Dawes, 369 Mass. 550, 553 (1976); Mass.R.Civ.P. 56(c). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue as well as demonstrating that the summary judgment record entitles the moving party to judgment as a matter of law. Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). Once the moving party establishes the absence of a triable issue, the party opposing the motion must respond and allege specific facts establishing the existence of a genuine issue of material fact. Id. at 17. Actions “to enforce promissory notes are especially suited to summary disposition.” United States Trust Company of New York v. Herriott, 10 Mass.App.Ct. 313, 320 (1980). Accord, Community Nat’l Bank v. Dawes, supra, 369 Mass. at 553-56. The same is true of actions involving the enforcement of guarantees. Royal Bank of Canada v. Connolly, 9 Mass.App.Ct. 905 (1980); New England Merchants Nat’l. Bank v. Kneeland, 8 Mass.App.Ct. 946 (1979).
“The defendants’ liability as guarantors is ascertained from the terms of the written contract.” Merrimack Valley National Bank v. Baird, 372 Mass. 721, 723 (1977) (citation omitted). “When the words of the contract are clear they alone determine the meaning of the contract, but when a contract term is ambiguous, its import is ascertained from the parties’ intent as manifested by the guaranty’s terms and the circumstances surrounding its creation, such as relationship of the parties, actions of the parties and established business usages.” Id. at 723-24 (citation omitted).
Marchionne’s argument based on the termination provision in the guaranty fails. He claims that his written notice of termination dated May 8, 1987 released him from all liability with respect to the notes. While the guaranty does provide a right of termination by written notice to the lender,[5] it also states explicitly that any notice of termination shall not affect the guarantor’s liability then “in existence or outstanding.”[6] The two notes executed by Epitaxial were outstanding at the time Marchionne sent the termination notice to BayBank and remain outstanding at this time. Therefore, under the unambiguous terms of his guaranty, Marchionne remains as a guarantor of Epitaxial's obligations. However, because the guaranty is a limited one, Marchionne’s liability is restricted to $50,000 plus attorneys fees and costs.
Marchionne’s argument that the plaintiffs claim is barred by the six-year contract statute of limitations set out in G.L.c. 260, §2 (1996 ed.) also fails. The applicable statute of limitations in actions upon “bills, notes or other evidences of indebtedness issued by a bank” is twenty years. G.L.c. 260, §1, Second (1996 *480 ed.). This action is indisputably one based on guaranties connected to notes issued by BayBank. The guaranty executed by Marchionne specifically provides that it is a warranty of payment of the notes, with no prior recourse by the bank (or its transferee) against the borrower, Epitaxial, being required. Nor is presentment, notice of dishonor or protest required. Where, as here, the guarantor’s obligations are primary and not collateral, the applicable limitations statute is the same one which applies to actions against the maker of the note itself. See D’Annolfo v. D'Annolfo Const. Co., 39 Mass.App.Ct. 189, 190-93, further app. rev. denied, 421 Mass. 1105 (1995). Thus the twenty-year limitations period prescribed by G.L.c. 260 §1 governs here, and this action is not untimely.
The plaintiff also moves for summary judgment on Marchionne’s counterclaim asserting a, violation of G.L.c. 93A. The counterclaim appears to be wholly premised on the undisputed fact that in July 1989, two years after Marchionne sent his letter of termination, the two notes were restructured. The fatal problem with the claim is that the guaranty expressly authorized this event. The guaranty states:
. . . The undersigned [i.e., Marchionne] authorizes the Bank to alter amend, cancel, waive or modify any term or condition of the Liabilities [the notes] and of the obligations of any other person liable or obligated to the Bank for or on the Liabilities, without notice to, or consent from, the undersigned
That the modification, or restructuring, did not take place until after Marchionne had sent in his letter of termination is immaterial, because, as indicated above, the termination did not remove or affect in any way Marchionne’s continuing responsibility for any “Liabilities” which were outstanding at the time his letter of termination was sent. Marchionne voluntarily executed the guaranty with these provisions clearly spelled out. Marchionne does not present any evidence or indeed argument to demonstrate why these provisions are either unfair or deceptive, and I do not find them to be so. Marchionne’s challenge under c. 93A must be rejected.
ORDER
For the foregoing reasons, the motion of the Cadle Company for partial summary judgment is ALLOWED. A hearing on damages is to be scheduled in the near future.

 The guaranty was originally executed in May 1986. It was re-executed in June 1986 because BayBank had used the wrong guaranty form. The May form stated that Marchionne would be guaranteeing a total debt of $50,000. The June form provided that Marchionne would be guaranteeing all the debts but would only be held liable for up to $50,000.

 The final paragraph of the guaranty provides in part: ‘This instrument shall remain in full force and effect as to all . . . costs and expenses and as to all liabilities . . . until the earlier of (a) ten (10) days following the actual receipt by the Bank ... of written notice signed by [the guarantor] of the termination thereof... No termination hereof shall affect any Liability in existence or outstanding ten (10) days following the date of such actual receipt.”

 BayBank also made a written demand on defendants Harry Kling, Francis Asip, Edward Vozzella, and Walter Niblack, each of whom had executed and delivered limited guarantees to BayBank, and on defendant Trinchera, who had executed an unlimited guaranty.

 In November 1994 the Cadle Company was substituted for BayBank as the plaintiff in this case.

 The last paragraph of the guaranty contract provides in part:
This instrument shall remain in full force and effect as to all such costs and expenses and as to all Liabilities, without regard to any reduction thereof other than by the undersigned pursuant to this Guaranty, until the earlier of (á) ten (10) days following the actual receipt by the Bank at its main office [. . .] of written notice signed by the undersigned [i.e. the guarantor (Marchionne)] of the termination thereof, or (b) the delivery of written notice of termination dated and signed by a duly authorized officer of the Bank, which notice of termination includes specific reference to this provision ...”

 The last paragraph of the guaranty continues:
... Ño termination hereof shall affect any Liability in existence or outstanding ten (10) days following the date of such actual receipt or delivery [of a written notice of termination] (including without limitation, those which are contingent or not then due and those which arise out of any check, draft, item, or paper which was made, executed, or drawn prior to the expiration of such (10) days, even if received by the Bank thereafter) nor any obligation of the undersigned hereunder which by its terms includes any Liability or obligation of a contingent nature (including, without limitation, the indemnification provided for herein).